**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MICHAEL MUNDAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JIMMY JOHNSON, and )<br>ROY MITCHELL, )<br>)<br>Defendants. ) | Case No. 05-1278-WEB |

MEMORANDUM AND ORDER

Now before the Court is Defendants' motion for summary judgment. Fed. R. Civ. P. 56; (Doc. 21). Plaintiff has alleged a claim pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I. Standard.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). The Court views the evidence and all reasonable inferences in favor of the non-moving party. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998)). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could

resolve the issue either way." *Id.* A genuine factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler,* 144 F.3d at 670-671. The movant can do this by demonstrating a lack of evidence on an essential element of the nonmovant's claim. *Id.* at 671. "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing Fed. R. Civ. P. 56(e)).

"To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F. 3d at 671 (internal citations and quotations omitted). The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson*, 477 U.S. at 256.

"[A]s previously noted in this district, 'the particular forms of evidence mentioned in [Rule 56] are not the exclusive means of presenting evidence on a [summary judgment] motion. The court may consider any material that would be admissible or usable at trial.'" *Arceo v. City of Junction City,* 182 F. Supp. 2d 1062, 1080 (D. Kan. 2002) (quoting *Wright v. Wyandotte County Sheriff's Dept.,* 963 F. Supp. 1029, 1035 (D. Kan. 1997)).

## II. Facts.

1. James Allen Johnson (Johnson) is a detective with the Wichita Police Department assigned to the Exploited and Missing Child Unit of the Wichita Police Department. He has worked that assignment for the last seven years including June 1, 2004.

2. Michael Munday (Munday) and Catherine Remmert (Remmert) are the parents of MRM, a minor child.

3. As part of his investigation, prior to June 1, 2004, Johnson obtained copies of the journal entry in case number 02 D 263 filed on January 14, 2004, which pertained to Munday and Remmert.

4. The journal entry states that Remmert and Munday shall have parenting time with MRM on alternating holidays, including Memorial Day; however, the order does not specifically state which parent gets which alternating holidays as part of the visitation plan. A subsequent journal entry states that neither Munday nor Remmert shall abuse, molest, or interfere with the privacy rights of the other party. (Pl. Ex. C ¶ 2).

5. Monday, May 31, 2004 was Memorial day.

6. The journal entry also states, "[Munday] shall have parenting time with the minor child on alternating Saturdays from 9:00 a.m. to 2:00 p.m.; alternating Sundays from 12:30 p.m. until Monday when he shall take the child to school and alternating Sundays from 9:00 a.m. until Monday when he shall take the child to school." (Def. Ex. F at 6 ¶ 3).

7. On Tuesday, June 1, 2004 Remmert stated in a telephone conversation to Detective Johnson that Munday had not returned her child at the scheduled time of 11:00 a.m. on Monday, May 31 at the Wichita Police Department West Patrol Substation following a visitation. She also stated that the child was not at school, that the natural father had not contacted her, and that she did

3

not know where the child was. The call came at approximately 9:00 a.m. on June 1.[1]

8. The information from Remmert concerned Johnson and he believed it constituted prima facie evidence that the father had violated the court order concerning the visitation of the child.

9. Johnson believed that there was an arrangement between the parties that the daughter was to be returned by 11:00 on May 31 because he had found Remmert to have been credible in the past.

10. Prior to his arrest on June 1, 2004 Munday had made numerous allegations of physical abuse of MRM by Remmert. On May 18, 2004, Johnson spoke to Remmert about the father's allegations. No charges were filed and Johnson thought they were false allegations.

11. Johnson took into consideration Munday's past unsupported charges of physical abuse by Remmert in determining whether he had probable cause for an arrest. Johnson believed Munday made these unsubstantiated allegations of abuse in an attempt to gain leverage over Remmert. (Def. Ex. G at 62: 20 to 63: 22).

12. Johnson believed that June 1st was the second time that Munday had violated the court order on returning the child because on a prior occasion Munday had not taken the child to school on a Monday as required by the order and had not returned the child to Remmert.

13. Johnson requested the Sedgwick County Sheriff's Office to go to Munday's home to locate the child. He estimates calling dispatch within thirty minutes of the mother's phone call at approximately 9:00 a.m. The sheriff's officer went to Munday's residence but found no one there. Johnson received this information probably within an hour of him contacting dispatch.

---

[1] Plaintiff attempts to controvert this by stating he is without knowledge because he was not privy to the conversation. This is not a pleading where a general denial is sufficient. On summary judgment, Plaintiff, as the nonmovant, bears the burden to provide specific facts to controvert this fact. He has not met this burden and it is uncontroverted.

14. At Johnson's direction, Michelle Bargdill, a social worker, called the child's physician and was told that the child had a 10:00 a.m. appointment and had just left, possibly en route to school. Plaintiff delivered the child to school at 11:00 a.m. after this doctor's appointment.

15. Munday was arrested at his home at approximately 2:30 p.m. for Interference with Parental Custody under Kan. Stat. Ann. 21-3422 on June 1, 2004. This is a misdemeanor charge. The arrest was approved by defendant Roy Mitchell, Johnson's superior officer. (Doc. 20 ¶ 5(a) and(b)).

16. While at Plaintiff's residence, a phone call was made to the daughter's preschool and it was determined that she was there.

17. Johnson completed an affidavit as part of his police report on June 1, 2004. Johnson did not complete any other affidavit.

18. On Thursday, May 27, at approximately 3:08 p.m. Remmert's attorney, Charles Harris (Harris) sent a fax transmission to Suzanne Dwyer (Dwyer), Munday's attorney, concerning the return of the daughter following a weekend visitation with Munday. The fax states that since there was no school on Monday, May 31, 2004 that the parties should agree to exchange MRM at the west substation of the Wichita Police Department at 8:30 a.m. on Monday the 31st. As an alternative, Harris conveyed his client's proposed agreement that Munday could keep the child overnight on Monday the 31st and return the child on Tuesday, June 1, 2004 on the condition precedent that Munday agree that Remmert would have the child on Sunday July 4th and Monday July 5th.

19. On May 28, 2004, Dwyer called Harris to indicate she reviewed Harris' fax. There is an issue of fact whether Dwyer and Plaintiff ever spoke about the proposals. However, it is undisputed that Harris received no other communication from Dwyer or her client in response to the

proposal at any time from May 27 or before Munday was arrested on June 1.  In particular, no agreement for the mother to have visitation on July 4th or 5th was communicated to Harris.  Dwyer did not communicate with Harris Plaintiff's belief that he was entitled to continue his visitation beyond May 31.  Harris expected that the child would be returned to Remmert on May 31.

20.  At no time between May 27th and June 1st did Harris send a copy of the fax to or have any communication with Johnson or any other member of the Wichita Police Department about the status of the Munday and his legal counsel.

21.  After taking Munday to jail, Johnson had no more contact with him.  Johnson did not speak to anyone at the jail or with the District Attorney's Office about whether plaintiff should be hold in jail.  Johnson does not know of a reason why plaintiff could not have posted bond or was held for a period of four to five days.

22.  Plaintiff received two phone calls from Officer Taylor from the west police substation on May 31 regarding MRM's visitation.  Officer Taylor requested Plaintiff provide information about the custody of MRM because Remmert was inquiring about her whereabouts.  After Munday explained that he thought he was entitled to retain custody of MRM through Memorial Day, Officer Taylor told Munday he would talk to Remmert and a third party named Petitioner.

<u>III. Governing law and analysis.</u>

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.

In response to Plaintiff's constitutional claims, Defendants have asserted the defense of qualified immunity.

"Qualified immunity provides government officials immunity from suit as well as from liability from their discretionary acts." *Smith v. Barber,* 195 F. Supp. 2d 1264, 1273 (D. Kan. 2002). "Once a defendant pleads qualified immunity, the plaintiff initially bears a heavy two-part burden. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue..." *Trigalet v. Young,* 54 F.3d 645, 647 (10th Cir. 1995) (citing *Albright v. Rodriguez,* 51 F.3d 1531, 1533 (10th Cir. 1995)).

"The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998)).

A. Probable Cause Determination.

Plaintiff alleges he was arrested without probable cause in violation of the Fourth Amendment. "[A] warrantless arrest is lawful under the Fourth Amendment if there is probable cause to believe that the person arrested has committed an offense." *Tanberg v. Sholtis,* 401 F.3d 1151, 1159 (10th Cir. 2005). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient

to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (internal quotations and citation omitted). "In evaluating whether the events leading up to this arrest amount to probable cause, we ask whether an objectively reasonable officer could conclude that the historical facts at the time of the arrest amount to probable cause." *Cortez v. McCauley*, — F.3d —, 2007 WL 503819 (10th Cir. Feb. 16, 2007) (en banc).

The facts show Officer Johnson received a call from Remmert on Tuesday stating that Munday had not returned her child at the scheduled time on Monday. She also stated that the child was not at school, that the natural father had not contacted her, and that she did not know where the child was. Officer Johnson believed Munday had previously failed to adhere to the court's visitation order; furthermore, Officer Johnson knew Munday had made unsubstantiated charges of abuse against Remmert in the past.

This information is sufficient to show probable cause that Munday was violating the Kansas statute against interference with parental custody. Kan. Stat. Ann. 21-3422. The statement from Remmert is strong evidence showing a violation of the law. *Guzell v. Hiller*, 223 F.3d 518, 519-520 (7th Cir. 2000) (police are entitled to base an arrest on a citizen complaint, whether of a victim or a nonvictim witness, without investigating the truthfulness of the complaint, unless they have reason to believe it is unreliable); *Eaton v. City of Boulder, Colo.*, 776 F.2d 1441, 1449-1450 (10th Cir. 1985) ("when examining informant evidence used to support a claim of probable cause for a ... warrantless arrest, the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an identified victim or ordinary citizen witness"). Given Remmert's complaint, Munday's past history

of making unsubstantiated abuse complaints and his past failure to follow the visitation order, an objectively reasonable officer would conclude there was probable cause that Munday had failed to return MRM in violation of the court's order.

Plaintiff argues his false allegations of abuse are irrelevant to the probable cause determination. The Court disagrees. Johnson believed Munday's allegations were attempts to use his daughter to gain leverage over Remmert. It is reasonable to conclude that Munday's failure to deliver MRM to Remmert was done with a similar motive.

Plaintiff next argues that Officer Johnson's prior knowledge of the court ordered visitation schedule removes probable cause. The Court disagrees. As Plaintiff himself concedes, the journal entry is ambiguous about which parent will visit with MRM over which holidays. The journal merely lists the applicable holidays and states the two parents will alternate. As a result, the journal entry did not dispel probable cause because it did not contradict Remmert's allegations.

Plaintiff next argues Officer Johnson should have interpreted the journal entry as contradicting Remmert's allegations and allowing Plaintiff to keep MRM over Memorial Day. The Court disagrees. Such an interpretation would be inconsistent with the evidence available to Officer Johnson. Officer Johnson knew Munday had a history of non-compliance with the visitation order, had made unsubstantiated complaints to use his daughter as leverage against Remmert, and Remmert had made a direct complaint against Plaintiff for failing to return MRM. No objectively reasonable officer would interpret an ambiguous provision in the journal entry as giving Plaintiff visitation over Memorial Day when all the evidence pointed to the contrary.

Plaintiff next argues Officer Johnson was obligated to conduct further investigation.[2] "[T]he probable cause standard requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of a warrantless arrest and detention." *Romero*, 45 F.3d at 1476-1477. Specifically, Plaintiff points to a conversation he had with Officer Taylor at the west police substation when Munday explained his interpretation of the journal entry and that he was keeping MRM over Memorial day.[3]

Plaintiff's argument is without merit. First, there is no evidence that Officer Johnson knew Plaintiff had spoken to Officer Taylor. Second, there is no evidence that Officer Taylor was readily available at the scene. While the exchange of MRM was supposed to take place on Monday at the west police substation, Remmert complained to Officer Johnson on Tuesday. The relevant scenes to investigate on Tuesday would have been the probable locations of MRM and Munday at that time.

Indeed, the facts show Officer Johnson did just that. On Tuesday, the day of the complaint, he had an officer go to Munday's house, he had a social worker call MRM's doctor, and he had another officer call MRM's school. The west police substation may have been a relevant place to investigate on Monday, the day of exchange; however, it would be unreasonable to assume either MRM or Munday would still be at the police station the following day or to assume that Munday had come to an agreement with another police officer about visitation rights under the journal entry.

---

[2] Plaintiff also alleges defendants should have gathered physical evidence and searched for other journal entries; however, he provides absolutely no facts to show what other specific evidence was available.

[3] Defendant makes strong arguments showing evidence of this conversation violates the rules of discovery and hearsay. The Court declines to address those arguments because accepting the evidence as admissible does not change the probable cause determination.

See *Id*. at 1477 (officer's failure to investigate arrestee's alibi witnesses did not negate the probable cause for the warrantless arrest).

Plaintiff argues he would have told Remmert that he planned to keep MRM during the Memorial Day holiday but he was forbidden to do so by court order. Without making any determination regarding the relevance of this fact, the Court concludes the evidence presented does not support such an assertion. The journal entry states, *inter alia*, that Munday and Remmert "shall not abuse, molest, or interfere with the privacy or rights of the other party." (Pl. Ex. C). However, there is nothing in the journal entry which forbids Munday from communicating with Remmert about the exchange of their child. Conversely, the January 2004 journal entry orders the parties to consult with each other regarding, *inter alia*, the welfare of the child and prolonged absences from the child's residence. (Def. Ex. F at 6). Plaintiff's assertion is the sort of conclusory allegation that cannot be used to withstand a motion for summary judgment.

Plaintiff next claims he was not told why he was arrested and the child was not in his custody at the time of his arrest. Plaintiff fails to provide any law or argument beyond this simple statement. The Court will not consider "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Wooten,* 377 F.3d 1134, 1145 (10th Cir. 2004) (quoting *Murrell v. Shalala*, 43 F.3d 1388, 1390 n. 2 (10th Cir. 1994)).

Plaintiff next argues the facts do not support a conviction. This argument is misplaced as the issue before the Court is not Plaintiff's actual culpability for the misdemeanor crime for which he was arrested; rather, whether Officer Johnson had probable cause to effectuate the arrest. The fact that Plaintiff is actually innocent or that charges were never brought against him is irrelevant to Officer Johnson's probable cause determination as "the Constitution does not guarantee that only

11

the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979); *Atkins v. Lanning,* 556 F.2d 485, 487 (10th Cir. 1977) ("A police officer who arrests someone with probable cause...is not liable for false arrest simply because the innocence of the suspect is later established").

Based on the totality of the circumstances, Defendants had probable cause to arrest Plaintiff and were not required to conduct any further investigation as suggested by Plaintiff. Defendants are protected by qualified immunity as there has been no violation of the Fourth Amendment. Summary judgment is granted on this claim.

B.  Veracity of Information in the Affidavit.

Plaintiff also claims Officer Johnson falsified information in an affidavit supporting Plaintiff's arrest. Although Officer Johnson executed a warrantless arrest, the Court finds the following law instructive. "To impeach an otherwise valid warrant on the ground that it was issued on specified information that was false and critical to the finding of probable cause requires proof that the affiant seeking the warrant knew that the challenged information was false or that he had a reckless disregard for its truthfulness." *Beard v. Northglenn,* 24 F.3d 110, 114 (10th Cir. 1994) (citing *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978)).

The only affidavit written by Officer Johnson in this case details much the same information already covered in this memorandum. The affidavit stated that: 1) Johnson was assigned to the exploited and missing child unit on June 1, 2004; 2) he was contacted by Remmert indicating Plaintiff had not returned MRM on Monday, May 31 at 11:00 a.m. and Plaintiff had not contacted her or delivered her to school; 3) Johnson was familiar with the case; 4) it was the second time in two weeks Plaintiff had violated the court order; and 5) Plaintiff had made false allegations of abuse.

(Def. Ex. B).

Plaintiff provides very little in the way of argument or analysis. However, Plaintiff does claim Officer Johnson's conclusions about the abuse were subjective. Officer Johnson's belief that the abuse allegations were false is supported by the evidence showing a number of accusations of abuse without charges ever being filed. Plaintiff's claim is insufficient to show falsity or a reckless disregard for the truth.

Plaintiff next provides evidence that the child was at school on Tuesday; however, this does not show the information in the affidavit to be false. Conversely, the evidence supporting Plaintiff's point actually demonstrates the veracity of Officer Johnson's affidavit. Plaintiff delivered the child to school at 11:00 a.m. on Tuesday after a doctor's appointment at 10 a.m. This confirms the information in Officer Johnson's report that at 9:00 a.m., at the time of Remmert's call, the child was not at school.

As a result, there is no factual basis for Plaintiff's allegation that the information in the affidavit was false or made with reckless disregard for the truth in violation of the Fourth Amendment. Summary judgment is warranted on this claim.

C. Fifth and Fourteenth Amendment claims.

Plaintiff also claims Defendants' actions violated his Fifth and Fourteenth Amendment rights. Defendant argues there is no factual or legal support for these claims. Plaintiff makes no effort to rebut or otherwise defend these claims.

The pre-trial order makes clear the factual basis for all of Plaintiff's claims arises from his arrest based on the alleged lack of probable cause and the alleged falsified affidavit. "Where a

particular Amendment provides an explicit source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Plaintiff's allegations relate to the protections guaranteed under the Fourth Amendment.  In the absence of any supporting argument from Plaintiff, the Court cannot find a basis for a violation of the due process rights of the Fourteenth Amendment.  As a result, the Court grants summary judgment on Plaintiff's claims based on the Fourteenth Amendment.

Plaintiff also makes a vague claim under the Fifth Amendment.  The Fifth Amendment states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. art. V.

Given the absence in Plaintiff's brief of any mention of the Fifth Amendment, the Court does not know and is not inclined to speculate as to which of the provisions of the Fifth Amendment Plaintiff believes were violated.  See *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir. 1991) (the Court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  As stated earlier, Plaintiff's claims implicate the provisions of the Fourth Amendment because they attack the existence of probable cause for his arrest.  Because the facts do not show any violation of the Fifth Amendment, summary judgment is warranted on this claim.

For the reasons elucidated above, Defendants are entitled to qualified immunity and to

summary judgment on that basis.  Defendants' Motion for Summary Judgment (Doc. 21) is GRANTED.   The Clerk is directed to enter Judgment for Defendants.

SO ORDERED this 23rd  day of February 2007.

 s/ Wesley E. Brown                             

Wesley E. Brown, U.S. Senior District Judge
